UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

FRITZ C. HECTOR,

               Plaintiff,

-against-

STATE AMBULETTE SERVICE, INC. and
BASIL MOHUN,

               Defendants.
----------------------------------------------------------x

**REPORT & RECOMMENDATION**
**03 CV 5518 (FB)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff filed the instant *pro se* action alleging discrimination based on his race and national origin pursuant to Title VII of the Civil Rights Act, as codified, 42 U.S.C. §§ 2000e, *et seq.* Following defendant's failure to answer or otherwise respond to the complaint, the Honorable Frederic Block, United States District Judge, referred the matter to the undersigned for an inquest and Report and Recommendation pursuant to 28 U.S.C. § 636(b) to determine: 1) whether defendant State Ambulette Service Inc. was properly served with the summons and complaint; 2) whether a default judgment should be entered; and if so, 3) to conduct an inquest as to damages. The Court determined that defendants were properly served, that a default judgment should be entered and conducted an inquest on damages on July 14, 2005. It is respectfully recommended that the Court should enter a default judgment against defendant State Ambulette Service in the amount of $4870.75. The action against defendant Basil Mohun should be dismissed.

# BACKGROUND

Since defendants have not appeared in this action, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. See Walia v. Vivek Purmasir & Associates, Inc., 160 F.Supp. 2d 380, 389 (E.D.N.Y. 2000). Plaintiff Fritz Hector was hired as a driver by State Ambulette in October 2000. Plaintiff was responsible for picking up patients from their homes and transporting them to their doctors. On June 5, 2001, plaintiff was assigned to transport a patient from 157 Greene Avenue, Brooklyn to a therapy clinic at 36 Plaza Street, Brooklyn. Plaintiff's supervisor, Mr. Basil Mohun, did not assign plaintiff an assistant to help him transport the patient on this date and he injured his back and shoulder while assisting the wheelchair bound passenger. When plaintiff informed defendant Mohun of the incident, plaintiff alleges Mohun screamed at him and called him a "black, lazy, negro haitian" and denied his request to seek medical attention. Complaint at 4. Plaintiff was then terminated.

On October 31, 2003, plaintiff filed the instant action alleging race and national origin discrimination. By motion dated January 9, 2004, plaintiff moved for default judgment. However, because it was unclear whether plaintiff had properly effected service on defendants, the Honorable Frederick Block denied plaintiff's motion for default judgment by Order dated July 6, 2004 and directed plaintiff to reserve defendants. Plaintiff was directed to serve a copy of the summons and complaint in the instant action on defendant State Ambulette Service, Inc. by November 30, 2004. By letter received on November 16, 2004, plaintiff submitted proof of service that on September 2, 2004, he had effected service by delivering two copies of the summons and complaint to the New York Secretary of State pursuant to Bus. Corp. §306 and by mailing a copy of the summons and

complaint to defendant's last known address.[1] Accordingly, plaintiff has properly effected service on defendant State Ambulette.

Since service was effected on September 2, 2004, defendant State Ambulette should have responded to the complaint by September 22, 2004. The Court directed defendant State Ambulette to show cause for its failure to respond to plaintiff's complaint by March 4, 2005. The Court warned defendant State Ambulette that the Court would enter a default judgment against it pursuant to Fed. R. Civ. P. 55(a) if it did not show cause for its failure to timely respond to plaintiff's complaint by March 4, 2005.

Defendants failed to respond to the Court's Show Cause Order. To date, defendant State Ambulette has not appeared or responded to plaintiff's complaint. Defendant was warned of the consequences of failing to respond to plaintiff's complaint. Accordingly, it is recommended that a default judgment should be entered against defendant State Ambulette.[2]

**INQUEST ON DAMAGES**

### A. Standard for Calculation of Damages

The entry of default establishes defendant's liability. Bambu Sales, Inc. v. Ozak Trading,

---

[1] As noted in N.Y.C.P.L.R. §311(a), service on a corporation may be made by one of the methods set forth in Bus. Corp. §306 or §307. Bus. Corp. §304 requires every domestic and authorized foreign corporation to designate the Secretary of State as its agent for service of process. Bus. Corp. §306 permits process to be served on a corporation by delivering (not mailing) two copies of the summons [and complaint] to the Secretary of State at his Albany office. The Secretary then mails the summons to the defendant, but service on the corporation is made and complete when the Secretary of State is served.

[2] Although plaintiff also names his supervisor, Basil Mohun, in this action, it is well established that individual defendants are not liable under Title VII. See Tomka v. Seiler, 66 F.3d 1295, 1314 (2d Cir. 1995). Accordingly, plaintiff's claims against defendant Mohun should be dismissed.

3

Inc., 58 F.3d 849, 854 (2d Cir. 1995). However, entry of a default judgment does not conclusively establish the amount of damages to be awarded to the prevailing plaintiff. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true.") (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

To calculate the amount of damages, the Court must conduct an inquiry to determine "the amount of damages with reasonable certainty." Credit Lyonnais, 183 F.3d at 155. This requires the Court to "determine the proper rule for calculating damages on such a claim, and assess[ ] plaintiff's evidence supporting the damages to be determined . . . ." Id.

At the Court's discretion, a prevailing Title VII plaintiff may be awarded back pay, see 42. U.S.C. 2000e-5(g)(1); EEOC v. Joint Apprenticeship Comm. of Joint Industry Bd. of Elec. Indust., 186 F.3d 110, 122 (2d Cir. 1999), prejudgment interest on the back pay award, Greenway v. Buffalo Hilton Hotel 143 F.3d 47, 55 (2d Cir. 1998), as well as front pay. Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1182 (2d Cir. 1996).

**B. Back Pay**

The purpose of the back pay provision under Title VII is "to make the victims of unlawful discrimination whole, by restoring them, so far as possible . . . to a position where they would have been were it not for the unlawful discrimination." Ford Motor Co. v. EEOC, 458 U.S. 219, 230 (1982) (internal quotations omitted). Back pay is the amount of actual damage incurred by plaintiff and is awarded to "completely redress the economic injury the plaintiff has suffered as a result of discrimination." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (internal

quotations omitted), cert. denied, 510 U.S. 1164 (1994). An award of back pay should normally consist of "lost salary, including anticipated raises, and fringe benefits." Id.

To calculate the back pay award, the Court must also consider plaintiff's statutory duty to mitigate his damages. 42 U.S.C. § 2000e-5(g) (interim earnings . . . shall operate to reduce the back pay otherwise allowable."); Dailey v. Societe Generale, 108 F.3d 451, 455 (2d Cir. 1997). "[T]o satisfy the duty to mitigate, 'the unemployed . . . need not go into another line of work, accept a demotion, or take a demeaning position.' Furthermore, '[t]he claimant's burden is not onerous, and does not require him to be successful in mitigation.'" Id. at 456 (quoting Ford Motor, 458 U.S. at 231). Plaintiff is merely required to exercise reasonable diligence in obtaining subsequent comparable work before awarding back pay. NLRB v. Thalbo Corp., 171 F.3d 102, 112 (2d Cir. 1999).

The measure of back pay is calculated from the date of plaintiff's injury (termination) until the date of the judgment (date of the entry of the default judgment). Saulpaugh, 4 F.3d at 144. Plaintiff's testimony at the inquest established that at the time that he was terminated from State Ambulette, on June 5, 2001, plaintiff was working forty (40) hours per week at a rate of $8.25 per hour for a weekly total of $330 (8.25/hour x 40 hours)(Inquest Tr. at 5). However, the Court must also consider plaintiff's interim earnings and his efforts to mitigate his damages which would reduce his back pay award accordingly. See 42 U.S.C. § 2000e-5(g). To grant plaintiff an award of back pay from June 5, 2001 to May 12, 2005, without factoring interim earnings and the mitigation of damages would grant plaintiff a "double benefit," severely punish and prejudice defendant, as well as usurp the Title VII purpose of making the plaintiff whole. See Keller v. Connaught, Inc., No. Civ.A-96-177 WL 56925, at *3 (E.D.Pa. Feb. 10, 1997) (gathering cases on double benefit analysis).

The Court may not simply rely on plaintiff's statement of damages, see Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d cir 1989), but must ensure that the award of damages is appropriate. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young, Inc., 109 F.3d 105, 111 (2d Cir. 1997).

Plaintiff's testimony and documents demonstrate that he was unemployed from June 2000 to August 2000. He began working as a driver for Richmond Transit, Inc at a rate of $9.00 per hour from September 2000[3] until May 2001. Plaintiff moved to a number of different positions in 2001: All State Staffing, Inc., Pla. Ex. 2, 3; Bobmar Transportation, Inc. and MV Transportation, Inc., where he earned $10.00 per hour. Pla. Ex. 4, Tr. 16, 24.[4] In 2002, plaintiff worked at TSE-PEO, Inc. Pla. Ex. 4. Plaintiff earned a higher wage at his new places of employment than he did at State Ambulette.

Consequently, plaintiff is entitled to back pay for a total of 13 weeks, from June through August, 2001, the period he was unemployed after being terminated by defendants. At the time of his termination, plaintiff earned approximately $330.00 per week ($8.25 per hour x 40 hours/week). Accordingly, the Court should award plaintiff back pay damages in the amount of $4290.00 ($330.00/week x 13 weeks).

---

[3]Plaintiff's testimony at the inquest was not clear with respect to the dates of his employment and his salary history. The Court relies on documents plaintiff submitted at the inquest (marked as plaintiff's exhibits 1-8) to determine plaintiff's wages and dates of employment. It appears that the dates plaintiff stated he was employed at the inquest are one year later than the dates reflected in his documents. Plaintiff's exhibits 1-8 documents are hereby incorporated and made part of the instant record.

[4]Plaintiff stated that he was working for "Access-a-Ride" and "Beaumont" during this period at a rate of $10.00 per hour. Plaintiff's documents demonstrate that the companies he worked for were Bobmar Transportation, Inc. and MV Transportation, Inc. Pla. Ex. 4. However, the names of plaintiff's employers do not affect the Court's analysis.

**C. Prejudgment Interest**

Title VII authorizes a district court to award prejudgment interest on a back pay award. Saulpaugh, 4 F.3d at 145. Denying prejudgment interest on a back pay award may constitute an abuse of discretion. Id. (citing Clarke v. Frank, 960 F.2d 1146, 1154 (2d Cir. 1992)). The rate at which prejudgment interest is calculated is within the Court's broad discretion, see Greenway, 143 F.3d at 55; Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071 (2d Cir. 1995), and courts in this circuit have applied "the United States 52-week treasury bill rate referred to in 28 U.S.C. § 1961, on the basis that it will ensure that the plaintiff is sufficiently, but not overly, compensated." Luciano v. Olsten Corp., 912 F. Supp. 663, 676-677 (E.D.N.Y. 1996) (citations and internal quotation marks omitted), aff'd, 110 F.3d 210 (2d Cir. 1997); see also Epter v. New York City Transit Authority, 216 F. Supp. 2d 131, 138 (E.D.N.Y. 2002); Robinson v. Instructional Systems, Inc., 80 F. Supp. 2d 203, 208 (S.D.N.Y. 2000) (citing cases), aff'd, 259 F. 3d 91 (2d Cir. 2001); Perdue v. City University of New York, 13 F. Supp. 2d 326, 342 (E.D.N.Y. 1998). The prejudgment interest rate is generally calculated from the date of the termination to the entry of the judgment. Perdue, 13 F. Supp. 2d at 342 (awarding prejudgment interest "up to the date that judgment is entered."); Luciano, 912 F. Supp. at 677 (awarding prejudgment interest "up to the date that judgment is entered").

Here, the prejudgment interest should be applied from June 2000, the beginning of the period in which plaintiff was unemployed to August 2005, when judgment should be entered. The average annual United States treasury bill rate for this period, June 2000 to August 2005, is 2.72%. See 28

U.S.C. § 1961(a).[5] See Walia 160 F. Supp. 2d at 389 (applying average annual treasury bill rate as prejudgment interest); Luciano, 912 F. Supp. at 677 (applying average treasury bill rate as prejudgment interest to five-year period).

This prejudgment interest rate calculation is appropriate because it "adequately ensures that the plaintiff is sufficiently, but not overly, compensated." McIntosh, 873 F.Supp. at 883. However, "given that the purpose of back pay is to make the plaintiff whole, [this purpose] can only be achieved if interest is compounded." Saulpaugh, 4F.3d at 145. Accordingly, compounding plaintiff's interest annually for a period of four years (representing the time between June 2001 to the present) at an interest rate of 2.72%, plaintiff is entitled to total compounded pre-judgment interest in the amount of $580.75. Accordingly, judgment should be entered against State Ambulette in the amount of $4,870.42

## CONCLUSION

Accordingly, it is recommended that the Court should enter a default judgment in plaintiff's favor against defendant State Ambulette in the amount of $4,870.75. This amount reflects plaintiff's back pay for lost wages in the amount of $4,290.00, and compounded prejudgment interest in the amount of $580.75, resulting in a total award to plaintiff of $4,870.75. Since there is no individual liability under Title VII, plaintiff's complaint against defendant Basil Mohun should be dismissed.

---

[5]Treasury bill rates have fluctuated between June 2001 to August 2005 for an average of 2.72%. See http://www.federalreserve.gov/releases/H15/data/m/tcm1y.txt.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989) (*per curiam*); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: August 19, 2005
Brooklyn, New York